WATERFALL, ECONOMIDIS,
  CALDWELL, HANSHAW & VILLAMANA, P.C.
5210 E. Williams Circle, #800
Tucson, AZ  85711
(520) 745-7810

Barry Kirschner/SBN 005592
bkirschner@wechv.com
Attorneys for Plaintiff

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Diana C. Anderson, | NO. |
| Plaintiff, | **Complaint** |
| vs. | |
| Sun Life Assurance Co. of Canada; and Community Health Systems, | |
| Defendants. | |

Plaintiff Diana Anderson ("Anderson") for her complaint alleges:

**PARTIES/ERISA**

1. Plaintiff Anderson is a participant of the short term disability ("STD") and long term disability ("LTD") Plans as a result of her employment with Northwest Medical Center ("NMC") in Tucson, Arizona for all relevant times including since January 1, 2008.

2. Jurisdiction over this matter is proper based on 29 U.S.C. § 1132.

3. Defendant Community Health Systems, Inc. ("CHS") is and, on information and belief, has been for relevant times a plan sponsor for the STD and LTD Plans for employees at NMC in Tucson, Arizona.

4. Anderson was employed at NMC beginning April 1993.

5. Defendant Sun Life Assurance Company of Canada ("Sun Life") is an insurance company which is the claim administrator and party responsible pursuant to the

Employment Retirement Income Security Act ("ERISA") Plan for administration and payment of STD and LTD benefits where applicable to participants and claimants within the group plan for NMC employees since January 1, 2009.

6. The relief requested in this action is for an award of LTD benefits.

7. Anderson is not seeking, at the time of this Complaint, STD disability benefits through this action.

8. Anderson is an intended beneficiary of the disability benefit protection purchased by NMC and for participants of the NMC Plan(s).

9. The United States Congress stated its purpose in enacting ERISA:

> "It is hereby declared to be the policy of this chapter to protect interstate commerce and the interests of participants in employee benefit plans and their beneficiaries, by requiring the disclosure and reporting to participants and beneficiaries of financial and other information with respect thereto, by establishing standards of conduct, responsibility, and obligation for fiduciaries of employee benefit plans, and by providing for appropriate remedies, sanctions, and ready access to the Federal courts."

ERISA § 2, 29 U.S.C. § 1001(b)

10. ERISA imposes a higher-than-market-place-quality standard on insurers and Plan Administrators to insure a full and fair review of claim denials.

11. Plan Administrators are responsible for a standard of care in discharging duties in respect to discretionary claims solely in the interests of participants and beneficiaries of the plan.

12. Defendant CHS owes Anderson a fiduciary duty as Plan Administrator.

13. Defendant Sun Life owes Anderson a fiduciary duty as Claim Administrator.

**ANDERSON'S EMPLOYMENT 1993 - 2009**

14. Anderson trained and received all relevant credentials to be recognized as a registered nurse ("RN").

15. Anderson was an operating room RN as her regular occupation when she was

WATERFALL, ECONOMIDIS
5210 E WILLIAMS CIR #800
TUCSON, AZ 85711
520-745-7810

BK/gg/2/28/12
Complaint FNL.wpd

2

Anderson v. Sun Life, et al.
CV new

1           injured on the job July 15, 2008

2    16.    In August 2008, NMC evaluated Anderson's performance as an operating room RN
3           with an above average rating.

4    17.    Anderson's salary as an RN was $39.55 per hour; $1,582 weekly.

5    18.    The RN duties Anderson performed in her regular occupation were physically
6           demanding.

7    19.    Anderson's medical problems disabled her from performing as an operating room
8           RN. December 9, 2008 was the last date Anderson performed the duties of an RN.

9    20.    Since December 9, 2008, Anderson has been medically unable to perform the
10          patient care duties of an RN.

11   21.    Anderson began light duty assignments at NMC approximately December 17, 2008
12          as an accommodation because of her medical condition.

13   22.    On May 5, 2009, NMC's Laurie O'Brien notified Anderson that she would be
14          terminated effective June 10, 2009 due to expiration of six month leave of absence
15          from her nursing position.

16   23.    Anderson objected to her termination. The date of threatened termination was
17          extended to August 4, 2009.

18   24.    In spring 2009, Anderson was assigned to perform work which would ordinarily
19          pay $12.83 hourly.

20   25.    For a period of time ending August 4, 2009, Anderson was compensated at the RN
21          rate although she performed the light duty clerical position.

22   **HISTORY OF PLANS**

23   26.    During 2008, Aetna Life Insurance Company ("Aetna") was the insurance
24          company, and, on information and belief, the Claim Administrator for the STD and
25          LTD Plan(s) in which Anderson was a participant.

26   27.    Effective January 1, 2009, Defendant Sun Life became the Claim Administrator of

WATERFALL, ECONOMIDIS
5210 E WILLIAMS CIR #800
TUCSON, AZ 85711
520-745-7810

BK/gg/2/28/12
Complaint FNL.wpd

3

*Anderson v. Sun Life, et al.*
CV new

| | | |
|---|---|---|
| 1 | | the relevant Plan(s). |
| 2 | 28. | Defendant Sun Life is responsible for paying benefits including, under some |
| 3 | | circumstance, benefits for participants who become unable to perform for medical |
| 4 | | reasons in 2008, prior to the Sun Life insurance Plan which took effect January 1, |
| 5 | | 2009. |
| 6 | 29. | Anderson has attempted numerous times to obtain information from her employer |
| 7 | | The Plan Administrator and the Claim Administrator regarding the plan which pre- |
| 8 | | existed the January 1, 2009 effective date, negotiations relating to the transition to |
| 9 | | Sun Life; Sun Life's responsibilities to continuing participants, and any |
| 10 | | interpretation of the continuity of coverage clause. |
| 11 | 30. | Anderson has not timely received information requested on the subjects listed |
| 12 | | immediately above, whether requested from NMC, the Plan Sponsor, or the Claim |
| 13 | | Administrator. |
| 14 | 31. | On or about July 15, 2009, Anderson was told by Sun Life that the contract was not |
| 15 | | yet finalized and could not be provided to Anderson. |
| 16 | 32. | Anderson was unable, even after multiple requests to her employer and/or Sun Life, |
| 17 | | to receive a copy of the LTD contract which had been in effect for her through |
| 18 | | NMC for 2008. |
| 19 | | **ANDERSON'S 2009 EMPLOYMENT AND CONTINUITY OF COVERAGE** |
| 20 | 33. | The Plan in effect beginning January 1, 2009 includes a provision in its LTD policy |
| 21 | | which states: |

> "**Continuity of Coverage**
>
> In order to prevent loss of coverage for an Employee when this Policy replaces a group LTD policy the Employer had in force with another insurer immediately prior to January 1, 2009 or the Employer Effective Date as shown Attachment B, if applicable, Sun Life will provide the following coverage:
>
> **Employees not Actively at Work on January 1, 2009 or the**

WATERFALL, ECONOMIDIS
5210 E WILLIAMS CIR #800
TUCSON, AZ 85711
520-745-7810

BK/gg/2/28/12
Complaint FNL.wpd

4

*Anderson v. Sun Life, et al.*
CV new

**Employer Effective Date as shown in Attachment B, if applicable**

An Employee may become insured under this Policy on January 1, 2009 or the Employer Effective Date as shown in Attachment B, if applicable, subject to all of the following conditions:
1. he was insured under the prior insurer's group LTD policy immediately prior to January 1, 2009 or the Employer Effective Date as shown in Attachment B, if applicable; and
2. he is not Actively at Work on January 1, 2009 or the Employer Effective Date as shown in Attachment B, if applicable; and
3. he is a member of an Eligible Class under this Policy; and
4. premiums for the Employee are paid up to date; and
5. he is not receiving or eligible to receive benefits under the prior insurer's group LTD policy.

If an Employee continues to be not Actively at Work and subsequently becomes Totally or Partially Disabled on or after January 1, 2009 or the Employer Effective Date as shown in Attachment B, if applicable, any LTD benefit payable will be the lesser of:
- the LTD benefit payable under this Policy; or
- the LTD benefit payable under the prior insurer's group LTD policy had it remained in force."

34. The purpose of the continuity of coverage provision is:

"In order to prevent loss of coverage for an Employee when this Policy replaces a group LTD policy the employer had in force with another insurer immediately prior to January 1, 2009. . .".

35. Anderson met all of the elements of Sun Life's continuity of coverage provision:

1. Anderson was a participant employee and NMC was the employer which purchased the relevant and continuous LTD policy coverage prior to January 1, 2009.

2. Anderson was not actively at work as an RN January 1, 2009.

3. Anderson was a member of an eligible class for disability insurance with Aetna as an NMC participant immediately prior to January 1, 2009.

4. The premiums were paid up to date for Anderson as a participant in both the Aetna Plan before January 1, 2009, and for Sun Life's Plan after that date.

WATERFALL, ECONOMIDIS
5210 E WILLIAMS CIR #800
TUCSON, AZ  85711
520-745-7810

BK/gg/2/28/12
Complaint FNL.wpd

5

*Anderson v. Sun Life, et al.*
CV new

|   |   |   |
|---|---|---|
| 1 | 5a. | Anderson was not receiving LTD benefits in 2008. |
| 2 | 5b. | As an individual who became unable to perform her regular occupation after December 9, 2008, Anderson was not eligible for LTD benefits before her Elimination Period was concluded in 2009. |
| 5 | 5c. | Whether measured by the Elimination Period of the Aetna policy which ended January 9, 2009 or the Sun Life policy which became effective January 1, 2009, Anderson's Elimination Period would cause her to be ineligible for LTD benefits during 2008. |
| 9 | 5d. | Anderson became medically disabled from performing her own occupation as RN and eligible to receive LTD disability benefits as of the termination of her Elimination Period in 2009. |

36. On or about May 19, 2009, NMC informed Defendant Sun Life that Anderson had been unable to work since December 10, 2008 but had been given light duty since December 2008.

37. On or about May 19, 2009, Anderson consulted with one or more personnel of NMC asking how to claim for benefits for which she may be entitled over and above the workers compensation claim which had been filed in 2008.

38. Anderson depended on the advice she sought from NMC and Sun Life on how to proceed in applying for and presenting necessary information for her disability benefit.

39. By the end of May 2009, Sun Life claims personnel knew that Anderson had not worked as an RN since December 2008 because of medical inability, had been given light duty work by NMC as an accommodation, was enrolled on the census of participants of LTD coverage for the NMC disability policy in effect immediately prior to January 1, 2009, and had never received LTD benefits for time after her injury of July 2008.

WATERFALL, ECONOMIDIS
5210 E WILLIAMS CIR #800
TUCSON, AZ 85711
520-745-7810

BK/gg/2/28/12
Complaint FNL.wpd

6

*Anderson v. Sun Life, et al.*
CV new

40. Anderson has not been able to work as an RN since December 2008 because of her physical disabilities.

**ANDERSON IS PERMANENTLY DISABLED BY HER WORK-RELATED INJURY AS DETERMINED BY THE ARIZONA WORKERS' COMPENSATION LAWS.**

41. A worker's compensation claim was filed based upon Anderson's July 15, 2008 work-related injury.

42. Anderson was sent a Notice of Claim Status March 18, 2009 stating her workers compensation claim was closed March 10, 2009.

43. Anderson successfully contested the closing of her workers compensation benefit.

44. The Industrial Commission of Arizona ("ICA") found in its Decision Upon Hearing and Findings and award for continuing benefits of August 11, 2009 that Anderson's cervical condition resolved with a permanent impairment and that she continued to need treatment for her left shoulder. It was determined that Anderson was entitled to partial disability compensation from July 15, 2008 until such time as her medical condition was to be considered stationary.

45. Following independent medical examinations ("IME") performed at the request of NMC's industrial carrier and a functional capacity examination ("FCE") ordered through the IME doctor, the industrial carrier conceded that Anderson could no longer work or earn the competitive salary of an RN.

46. On August 11, 2010, the ICA issued its award of permanent disability with monthly benefits of $396.46 to supplement Anderson's maximum wage as a Patient Satisfaction Representative, her accommodated position.

47. The August 11, 2010 findings and award by the ICA found that Anderson could perform duties of a patient satisfaction representative or comparable work enabling her to earn $2,279.16 based on date of injury (monthly) rates.

48. Sun Life knew in 2009 that Anderson had suffered an industrial injury which

WATERFALL, ECONOMIDIS
5210 E WILLIAMS CIR #800
TUCSON, AZ 85711
520-745-7810

BK/gg/2/28/12
Complaint FNL.wpd

7

*Anderson v. Sun Life, et al.*
CV new

1 prevented her from the full-time duties of her regular occupation as an RN.

2 49. Sun Life received the file created by the industrial carrier for Anderson's work related injury no later then January 19, 2011.

50. Neither Sun Life, nor the Plan Administrator, nor NMC has given a reasoned explanation disagreeing with the conclusion of the industrial carrier that Anderson's condition is disabling from her pre-injury regular occupation of operating room RN.

**ANDERSON'S MEDICAL CONDITION**

51. Anderson received an award from NMC for perfect attendance in 2007.

52. On July 15, 2008, Anderson suffered an on-the-job work injury to her shoulder.

53. Anderson's last day performing duties as an operating room RN was December 9, 2008.

54. Anderson was limited and began light duty December 17, 2008.

55. A March 4, 2009 MRI of Anderson's left shoulder noted moderate to high grade partial thickness tear of articular surface and interstitial fibers of the supraspinatus.

56. On March 23 2009, Dr. Roxann Lafferty signed a release form allowing Anderson to return to work "avoiding activities that bother her symptoms."

57. On March 25, 2009, treating orthopedic surgeon Joel Thompson ("Thompson") limited Anderson: "Regarding work status, she would be okay for a sedentary desk-type job, but is in no condition to lift more than 5 lbs and certainly could do no overhead activity." Thompson reaffirmed this restriction March 26, 2009.

58. Orthopedic surgeon Dr. John Abbott ("Abbott") examined Anderson as part of an IME July 13, 2009. The IME was requested by the industrial carrier for NMC.

59. Abbott's July 13, 2009 report stated in part Anderson should: "continue with her present limitations, including no lifting greater than five pounds with the left upper extremity with no repetitive overhead use of the left arm."

WATERFALL, ECONOMIDIS
5210 E WILLIAMS CIR #800
TUCSON, AZ 85711
520-745-7810

BK/gg/2/28/12
Complaint FNL.wpd

8

*Anderson v. Sun Life, et al.*
CV new

60. Sun Life's nurse consultant Marie Gluszek, RN wrote to Sun Life employee Pamela Allard August 12, 2009: ". . . it does appear that the medical file does reasonably support the diagnosis and physical impairment class stated as light, no overhead lifting, lifting limited to 5 lbs."

61. When Anderson discussed her possible return to nursing in some form of appropriately restricted light duty in 2009, NMC advised Anderson that this could not be accommodated.

62. At Abbott's request, an FCE was arranged and performed February 1-2, 2010 by Karen Lunda ("Lunda"). Lunda's FCE concluded: "Based on the results of the FCE, the client is not considered safe to perform patient handling."

63. In his May 22, 2010 letter, Abbott endorsed the results of the FCE.

64. On July 16, 2010, Dr. Robert Pedowitz ("Pedowitz") performed a left shoulder subacromial decompression & distal clavicle resection on Anderson.

65. The Pedowitz surgery was not successful in restoring Anderson's work capacity.

66. Sun Life retained nurse consultant Susan McCormack ("McCormack") to review Anderson's medical records current to February 11, 2011.

67. McCormack concluded that Anderson had received appropriate treatment, had medically supported restrictions prior to April 17, 2009, and that the FCE findings were reasonable.

68. McCormack concluded that Anderson could return to light duty but did not conclude that she could return to a nursing position performing patient care.

69. Sun Life retained independent reviewing physician Richard D. Corzatt, M.D. ("Corzatt") in 2011.

70. Corzatt concluded: ". . .Predicated primarily on Dr. Abbott's IME's and the physical capacity evaluation, the insured would be precluded from return to work in a medium occupation."

WATERFALL, ECONOMIDIS
5210 E WILLIAMS CIR #800
TUCSON, AZ 85711
520-745-7810

BK/gg/2/28/12
Complaint FNL.wpd

9

*Anderson v. Sun Life, et al.*
CV new

71. Corzatt stated: "The claimant's current complaints are a direct result of her shoulder injury in July 2008."

**UNABLE TO PERFORM HER REGULAR OCCUPATION, ANDERSON WORKED A LIGHT DUTY JOB AS AN ACCOMMODATION IN 2009 AND 2010.**

72. NMC provided the opportunity to Anderson, who accepted the opportunity, to work in an accommodated job position which was less physically demanding and which normally paid considerably less than RN.

73. Anderson's final salary as an RN was $39.55 per hour. The pay for a customer service representative as of 2009 was $12.83 per hour.

74. The Sun Life LTD policy includes the definition: "**Gainful Occupation** means employment that is or can be expected to provide an Employee with an income of at least 80% of his Indexed Total Monthly Earnings."

75. Anderson has never been in a "**Gainful Occupation**" since she performed as an RN December 9, 2008.

76. The accommodation to Anderson with light duty work after December 9, 2010, in a position which regularly compensated at a salary approximately 1/3 of Anderson's Indexed Total Monthly Earnings as an RN, does not make that light duty work Anderson's new "Regular Occupation" under the Sun Life policy.

77. By accepting alternative employment as an accommodation, Anderson did not forfeit her right to claim that she was disabled from her regular occupation of RN.

78. Anderson was medically limited from performing as an RN continually from December 2008 through the time of the consideration of her disability by Sun Life.

79. Anderson was medically limited from performing as an RN continually from December 2008 through the time of the consideration of her disability appeal by Sun Life.

80. Anderson has been medically limited from performing as an RN continually since

WATERFALL, ECONOMIDIS
5210 E WILLIAMS CIR #800
TUCSON, AZ 85711
520-745-7810

BK/gg/2/28/12
Complaint FNL.wpd

10

*Anderson v. Sun Life, et al.*
CV new

December 2008.

81. Sun Life never accumulated the Aetna LTD policy prior to denying Anderson's claim for LTD benefits.

82. Sun Life never requested or reviewed the Aetna LTD policy prior to denying Anderson's appeal following the denial of her claim for LTD benefits

**CLAIM HANDLING**

83. Anderson filed a claim for benefits with Sun Life in May 2009.

84. Anderson advised Sun Life claims personnel in a May 19, 2009 statement that she had become unable to work as an RN, her regular occupation, since December 10, 2008.

85. Anderson advised Sun Life claims personnel that she had been offered the opportunity and was working light duty at NMC.

86. Sun Life claims personnel confirmed that Anderson was eligible for LTD benefits by June 2, 2009.

87. NMC personnel including Human Resources Laurie O'Brien provided the phone number for Defendant Sun Life and directed Anderson to make her claim through Sun Life.

88. Anderson provided data to the claims department of Sun Life. Sun Life assessed her situation as an application for STD benefits.

89. On or about June 2, 2009, a Sun Life employee believed to be Lisa Braun asked Anderson why she filed a claim with Sun Life if Anderson believed the disabling condition originated from a work place injury. Sun Life noted a response by Anderson to the effect that the worker's compensation case was closed and she continued to be unable to work.

90. At no time in 2009 did Sun Life review the Aetna or Sun Life policy in effect during 2008 to evaluate whether the continuity of coverage provision would apply

WATERFALL, ECONOMIDIS
5210 E WILLIAMS CIR #800
TUCSON, AZ 85711
520-745-7810

BK/gg/2/28/12
Complaint FNL.wpd

11

*Anderson v. Sun Life, et al.*
CV new

|   |   |   |
|---|---|---|
| 1 |     | to Anderson's STD or LTD benefit claim. |
| 2 | 91. | At no time in 2010 did Sun Life review the Aetna or Sun Life policy in effect |
| 3 |     | during 2008 to evaluate whether the continuity of coverage provision would apply |
| 4 |     | to Anderson's STD or LTD benefit claim. |
| 5 | 92. | At no time in 2011 did Sun Life review the Aetna or Sun Life policy in effect |
| 6 |     | during 2008 to evaluate whether the continuity of coverage provision would apply |
| 7 |     | to Anderson's STD or LTD benefit claim. |
| 8 | 93. | By letter of June 18, 2009 ("denial letter"), Sun Life formally denied Anderson's |
| 9 |     | claim, which was treated as one for STD benefits and informed her of her right of |
| 10 |     | appeal pursuant to ERISA. |
| 11 | 94. | The letter claimed Anderson was employed as an RN and that the last day she |
| 12 |     | worked was February 22, 2009. |
| 13 | 95. | The denial letter stated that Anderson was <u>not</u> actively at work in her regular |
| 14 |     | occupation of RN as of January 1, 2009. |
| 15 | 96. | The denial letter explained the reason for denial of benefits as the STD coverage |
| 16 |     | under the Sun Life policy excluded claims arising out of work-related injuries. |
| 17 | 97. | Nowhere in the denial letter or in any explanation provided to Anderson was the |
| 18 |     | concept of continuity of coverage explained to Anderson. |
| 19 | 98. | Nowhere in the denial letter was there any recognition that Anderson, when |
| 20 |     | working since December 10, 2008, was working in an accommodated position |
| 21 |     | because of her medical needs and inability to perform physical requirements of |
| 22 |     | operating room RN. |
| 23 | 99. | Both Sun Life medical consultants were aware that, if Anderson's disability arose |
| 24 |     | from a work-related injury, she would be ineligible for benefits. |
| 25 | 100. | Anderson questioned whether a work-related injury exclusion existed to recover |
| 26 |     | benefits, and Anderson repeatedly requested from Sun Life and NMC |

WATERFALL, ECONOMIDIS
5210 E WILLIAMS CIR #800
TUCSON, AZ 85711
520-745-7810

BK/gg/2/28/12
Complaint FNL.wpd

12

*Anderson v. Sun Life, et al.*
CV new

documentation of the exclusion of benefits for an injury which occurred at work.

101. NMC, the Plan, and Claim Administrator did not help, and basically ignored Anderson's request.

102. The Sun Life policy for STD had an exclusion for injuries which occurred at work..

103. The <u>LTD policy did not have an exclusion</u> for <u>disability payments from injuries which had been work related</u>.

104. The Aetna LTD policy which protected the NMC group prior to January 1, 2009 also did not have an exclusion for benefits where the medical disability originated from a workplace accident.

105. Sun Life placed Anderson's appeal of her denial of benefits within it's STD unit, and never advised Anderson or the LTD unit that Anderson was eligible for LTD benefits.

106. Only after receiving a letter from Anderson's retained counsel in May 2011 did Sun Life acknowledge that it had never granted or denied the 2009 appeal.

**ANDERSON'S LTD APPEAL**

107. Anderson stated to NMC and Sun Life during the first half of 2009 that she was unable to perform her RN duties since December 10, 2008 in her appeal.

108. Sun Life had received an application for disability benefits and had received information from Anderson and NMC that Anderson was not medically able to perform the RN position and had been offered and accepted light duty work which was a substantial drop in pay from her regular occupation as OR RN.

109. By June 2009, Anderson was entitled to LTD benefits for reasons known to Sun Life.

110. Rather than recognize Anderson's entitlement to LTD benefits, Sun Life pigeonholed her claim and denied it for an exclusion, work-related injury, which was applicable to STD coverage but not LTD coverage.

WATERFALL, ECONOMIDIS
5210 E WILLIAMS CIR #800
TUCSON, AZ 85711
520-745-7810

BK/gg/2/28/12
Complaint FNL.wpd

13

Anderson v. Sun Life, et al.
CV new

111. Sun Life never informed Anderson of her LTD right to receive benefits even though its claims personnel knew that all of the essential elements for a worthy LTD claim had been met by Anderson.

112. Sun Life neglected to communicate to Anderson about the LTD benefit in spite of having all necessary information about Anderson's medical disability from her regular occupation, and medical data confirming her continued restrictions. *See* Exhibit 1, Anderson appeal (without exhibits) at pages 8-12.

113. Anderson's counsel in 2011 delivered thorough explanations of the 2009 neglect in applying information it possessed in Anderson's favor.

114. Sun Life chose to deny Anderson's appeal with its December 8, 2011 explanation in three paragraphs on page 5 of its denial which are set forth in their entirety:

> "At the time of her claimed injury of July 15, 2008, Ms. Anderson was working as a Registered Nurse, and was covered under a prior Policy. However, as of April 2009, while covered under Sun Life's Policy, Ms. Anderson's physician restricted her to light duty work. At that time, she began a Pilot program position which she performed within her restrictions and limitations at Northwest Medical Center while receiving her full RN salary (no earnings loss). As of August 2, 2009, Ms. Anderson'[sic] applied for, and was offered the position of Patient Satisfaction Representative. She continued to perform this occupation until she ceased work altogether on June 20, 2010.
>
> Although you argue that Ms. Anderson is covered under this Policy based on her occupation as a Registered Nurse due to "Continuity of Coverage", you fall short in your interpretation because the Policy in force provides coverage for the insured's 'own occupation', that is performed immediately prior to the disability. According to our records, Ms. Anderson became eligible for ('LTD') coverage with Sun Life under the Policy on January 1, 2009, with a claimed date of disability of June 21, 2010. If your argument stands, that Ms. Anderson's 'own occupation' is a Registered Nurse, then her disability date would have had to occur on July 15, 2008 when she last worked as a RN. And since this disability date predates her coverage with Sun Life, her claim would have to be submitted to the prior carrier for consideration.
>
> However, since Ms. Anderson was performing the duties of Patient Satisfaction Representative on the date last worked, or June 20, 2010, and the policy defines 'own occupation [sic] as 'the usual and customary employment, business, trade, profession or vocation that the Employee performed as it is generally recognized in the national

WATERFALL, ECONOMIDIS
5210 E WILLIAMS CIR #800
TUCSON, AZ 85711
520-745-7810

BK/gg/2/28/12
Complaint FNL.wpd

14

*Anderson v. Sun Life, et al.*
CV new

economy immediately prior to the first date 'Total or Partial Disability' began'. It is our determination that we have correctly identified Ms. Anderson's 'own occupation' as Patient Satisfaction Representative, and not Registered Nurse." [Emphasis in original.]

115. Sun Life implicitly acknowledged the critical fact that Anderson was disabled from her regular occupation of RN from the time of the effective date of the new contract, January 1, 2009, through August 2, 2009, when she applied for and was offered the position of Patient Satisfaction Representative.

116. Sun Life did not consider the fact that Anderson had been placed on light duty and accepted a job which would pay $12.83 per hour instead of her regular occupation salary of $39.55 hourly because, if it confronted that information, Anderson would clearly be entitled to Total or Residual Disability under the policies in effect.

117. In spite of Anderson's lengthy explanation of the facts in her appeal, Sun Life chose to treat the date of June 21, 2010 as the date of disability. They ignored the detailed facts establishing Sun Life had been told, and had all of the information needed, to establish a long-term benefit payment to Anderson for inability to perform as an RN by June 2009.

118. Sun Life claims Anderson's interpretation of continuity of coverage falls short because the "own occupation" is that which was performed immediately prior to the claimed date of disability. In spite of Anderson's lengthy appeal on the subject and the ample history at Sun Life knowing of all of the elements which would entitle Anderson to LTD benefits as of June 2009, Sun Life insists on a disability date of June 2010.

119. One motive for Sun Life's arbitrary and capricious behavior was to position Defendant to deny benefits by changing the issue away from the physical requirements of RN which Anderson undisputably could not perform, to the light duty work.

WATERFALL, ECONOMIDIS
5210 E WILLIAMS CIR #800
TUCSON, AZ 85711
520-745-7810

BK/gg/2/28/12
Complaint FNL.wpd

15

Anderson v. Sun Life, et al.
CV new

120. The relevant Sun Life disability policy incorporated benefits for Plan participants such as Anderson who had been Plan members prior to the effective date of the Sun Life contract, January 1, 2009, where the participant had become disabled prior to January 1, 2009 but was not yet receiving or eligible to receive benefits under the contract in effect for participants prior to January 1, 2009.

121. Anderson had become disabled from her own occupation of RN prior to December 31, 2008. Sun Life has known this since 2009.

122. In April 2011, Anderson finally obtained the Aetna LTD policy as a result of her efforts directly made through Aetna personnel.

123. There is no indication from the Aetna LTD policy that it excludes work-related injuries.

124. On the contrary, benefits from workers compensation are listed as a potential offset under no other benefits category in the Aetna LTD policy.

125. Anderson and counsel continued to request the Aetna disability policy in May and June of 2011 from Defendants.

126. Defendants have deleted documents from the administrative file which are important and should have been provided to Anderson.

127. Counsel's June 2011 letter to Sun Life directly advised it that important documentation from Anderson had been provided in 2009 but appears to have been deleted from the file because it was not contained in the file later produced by Sun Life.

128. Instead of taking action to correct the error, Sun Life denied the Anderson appeal without considering the documents.

129. Sun Life has a structural conflict of interest in connection with the Anderson claim because it is the source of payment if benefits are granted.

///

WATERFALL, ECONOMIDIS
5210 E WILLIAMS CIR #800
TUCSON, AZ 85711
520-745-7810

BK/gg/2/28/12
Complaint FNL.wpd

16

*Anderson v. Sun Life, et al.*
CV new

# COUNT I
# DECLARATORY JUDGMENT

130. Plaintiff incorporates all prior paragraphs as if fully set forth herein.

131. Defendant Sun Life has acted in violation of its duty and arbitrarily and capaciously in:

   a. Denying Anderson's LTD benefit claim;

   b. Refusing to consider the LTD claim based on Anderson's regular occupation of RN;

   c. Ignoring Anderson's rights pursuant to the continuity of coverage clause of its policy;

   d. Misconstruing the continuity of coverage clause in denying Anderson's appeal;

   e. Refusing to acknowledge Anderson's medical inability to perform as an RN while interpreting her LTD benefits in spite of recognizing her medical disability while it had an alternative basis (work-related injury) to deny any STD claim of Anderson; and

   f. Refusing to treat Anderson as a participant entitled to the full benefit justified by her medical condition and by misdirecting a solid case for LTD through an ineffective administration of STD analysis.

   g. Promoting and not correcting practices which encouraged or tolerated bias against its claimant participants in its handling of medical personnel, settlement negotiations, policy interpretation, and training its personnel or persons who operate in Sun Life's name or with its authority.

# COUNT II
# STATUTORY DAMAGES

132. Plaintiff incorporates all prior paragraphs as if fully set forth herein.

133. Anderson and her counsel on multiple occasions requested necessary

WATERFALL, ECONOMIDIS
5210 E WILLIAMS CIR #800
TUCSON, AZ 85711
520-745-7810

BK/gg/2/28/12
Complaint FNL.wpd

17

*Anderson v. Sun Life, et al.*
CV new

documentation from the Plan Administrator through NMC, Sun Life, and directly to CHS.

134. The Plan Administrator failed to timely and appropriately respond to these legitimate requests for information.

135. Anderson was told by the designated agents of the Plan Administrator that it was futile for her to request a copy of the contract which governed the terms of her disability benefits.

136. Anderson was told by Defendant Sun Life that, if she wanted to learn the terms of the LTD contract in effect in 2008, she should do so on her own, without the help of Sun Life.

137. The continuity of coverage provision of the Sun Life contract made the previous LTD contract a necessary Plan document in the context of Anderson's claim.

138. Defendants in their administration of Anderson's claim have failed or refused to comply with requests for information they were required to furnish Anderson following her request.

139. Defendants have violated 29 U.S.C. § 1132(c)(1) and should be assessed the appropriate sanction for not complying with ERISA including daily penalties for the period(s) Anderson was deprived pertinent information.

WHEREFORE this Court should enter its order declaring that Anderson is entitled to back benefits with interest, continuing benefits, payments for the withholding of required information pursuant to 29 U.S.C. § 1132(c)(1), attorneys' fees, costs, and all other available relief applicable under law or equity.

RESPECTFULLY SUBMITTED February 28, 2012.

      WATERFALL, ECONOMIDIS, CALDWELL,
        HANSHAW & VILLAMANA, P.C.

      By s/Barry Kirschner
        Attorneys for Plaintiff

WATERFALL, ECONOMIDIS
5210 E WILLIAMS CIR #800
TUCSON, AZ 85711
520-745-7810

BK/gg/2/28/12
Complaint FNL.wpd

18

*Anderson v. Sun Life, et al.*
CV new