1  WO

2

3

4

5

6                    IN THE UNITED STATES DISTRICT COURT

7                        FOR THE DISTRICT OF ARIZONA

8

9  Diana C. Anderson,                        No. CV-12-00145-TUC-CKJ

10                     Plaintiff,             **ORDER**

11  v.

12  Sun Life Assurance Co. of Canada; and
    CHS/Community Health Systems, Inc.,

13                     Defendants.

14        Pending before this Court are several motions.  On March 21, 2013, Defendant

15  Sun Life Assurance Co. of Canada ("Sun Life") filed a Motion for Summary Judgment

16  on All Plaintiff's Claims.  (Doc. 65).  Plaintiff filed her Response on April 24, 2013.

17  (Doc. 82).  Sun Life filed a Reply on May 22, 2013.  (Doc. 95).

18        On March 21, 2013, Plaintiff filed a Motion for Summary Judgment.  (Doc. 67).

19  On April 18, 2013, Defendant CHS/Community Health Systems, Inc. ("CHS") filed a

20  Response.  (Doc. 78).  Sun Life filed a Response on April 22, 2013.  (Doc. 80).  Plaintiff

21  filed her Reply on May 21, 2013.  (Doc. 94).

22        On March 21, 2013, Defendant CHS filed a Motion for Summary Judgment on All

23  of Plaintiff's Claims.  (Doc. 69).  Plaintiff filed her Response on April 25, 2013.  (Doc.

24  84).  On May 9, 2013, CHS filed its Reply.  (Doc. 92).

25        Finally, on April 10, 2013, Sun Life filed a Motion to Dismiss for Failure to State

26  a Claim.  (Doc. 76).  Plaintiff filed her Response on April 29, 2013.  (Doc. 87).  On May

27  2, 2013, Sun Life filed its Reply.  (Doc. 89).  The Court heard oral argument on October

28  7, 2013.  (Doc. 104).

1

2    *I.    Factual Background[1]*

3         Plaintiff began her employment as a Registered Nurse at Northwest Medical

4    Center on April 4, 1993.  (Administrative Record at 862-868)("AR").  As a Registered

5    Nurse, Plaintiff's salary was $39.55 per hour.  (AR at 2).  On July 15, 2008, Plaintiff

6    suffered a work related injury.  (AR at 827-828).  Plaintiff's disability insurance carrier at

7    that time was Aetna.  (Plaintiff's Statement of Facts at ¶67)(Doc. 68).

8         Shortly after suffering her injury, Plaintiff continued working as a Registered

9    Nurse.  (Doc. 68 at ¶6).  However, beginning on December 10, 2008, Plaintiff was unable

10   to continue her duties as a Registered Nurse due to the July 15, 2008 injury.  (AR at 867-

11   868).  On December 16, 2008, Plaintiff returned to Northwest Medical Center.  She

12   began performing clerical work to accommodate for her injury, without a reduction in

13   salary.  (AR at 14-15).  Since December 10, 2008, Plaintiff has been medically restricted

14   form working as a Registered Nurse in patient care.  (AR at 576-578, 1228-1330).

15        On January 1, 2009, the long term and short term disability coverage for

16   Northwest Medical Center employees transitioned from Aetna to Sun Life.  (AR at 1014-

17   1062).  Sun Life became the claims administrator for the disability insurance plan and

18   CHS was the plan administrator.  (Sun Life's Statement of Facts at ¶2)(Doc. 66).

19        Officially, Plaintiff was on a leave of absence from her position as a Registered

20   Nurse at Northwest Medical Center from December 10, 2008 through June 10, 2009. (AR

21   at 826). However, on April 17, 2009, Plaintiff was approved for a temporary pilot

22   program as a Patient Satisfaction Representative, to accommodate for her disability.  (AR

23   _____

24         [1] The Factual Background is derived from the undisputed facts contained in the
     parties' Statement of Facts and the Administrative Record.  All citations reflect the

25   section of the Administrative Record that supports the factual assertion except where
     otherwise noted.  Defendant Sun Life has objected to the majority of Plaintiff's Statement

26   of Facts arguing that they violate Local Rule 56.1(a) without indicating whether it
     controverts the factual assertion.  (Doc. 81).  However, it is the Court's role to determine

27   which facts are necessary to decide the motion.  To the extent the Court finds that
     information in Plaintiff's Statement of Facts is necessary to the Court's analysis, is

28   supported by the Administrative Record, and was not specifically controverted or
     disputed by Sun Life, but only objected to pursuant to LRCiv. 56.1(a), the information
     will be considered as admitted to by Sun Life.

at 2042).  Initially, Plaintiff worked in the pilot program without a reduction in salary. (AR at 2042).  On May 5, 2009, Northwest Medical Center advised Plaintiff that her leave of absence from her position as a Registered Nurse would expire on June 10, 2009 and if she was unable to return to her position as a Registered Nurse by that date, she would be terminated.  (AR at 826).

On May 19, 2009, Plaintiff contacted Sun Life to apply for disability benefits. (AR at 862-868).  She told Sun Life about her July 2008 injury and that since December 10, 2008, she has been unable to perform her duties as a Registered Nurse.  (AR at 862-868).  She further informed Sun Life that her position was going to be terminated on June 10, 2009.  (AR at 862-868).   Plaintiff contends that she believed she was filing a claim for short term and/or long term disability benefits.  (AR at 862-868).

On June 18, 2009, Sun Life admitted that Plaintiff's medical disability was founded but denied Plaintiff's claim for short term disability benefits based on an exclusion for work related injuries.  (AR at 1102-1105).  Sun Life's claim file indicates that Plaintiff was eligible for long term disability.  (AR at 14).  Sun Life did not inform Plaintiff that the exclusion for work related injuries did not apply to her long term disability coverage.  (Doc. 68 at ¶62).

On July 15, 2009, Plaintiff sent an email to Sun Life providing a timeline for her injury and noting that she believed she was entitled to short term and long term disability benefits.  (AR at 1117-1119).  She also requested copies of all documents, records, and other information relevant to her claim for benefits.  (AR at 576-578).  On July 29, 2009, Plaintiff wrote to Sun Life regarding the denial of her disability claim arguing that other employees have received worker's compensation and short term/long term disability for work related injuries.  (AR at 1198-1203).  Despite Plaintiff's repeated referrals to short term and long term disability coverage, Sun Life did not process Plaintiff's claim for long term disability benefits at that time.  (AR at 7).   Instead, Sun Life interpreted Plaintiff's protests as an appeal of the denial of short term disability benefits.  (AR at 79).

Plaintiff's temporary position as a Patient Satisfaction Representative was

1    subsequently made permanent.  (AR at 176).  On August 2, 2009, Plaintiff was officially

2    hired as a Patient Satisfaction Representative and her salary was reduced to $12.83 per

3    hour.  (AR at 176).  This position required a light level of physical exertion.  (AR at

4    1529-1535).

5        Plaintiff stopped working as a Patient Satisfaction Representative on June 20,

6    2010.  (AR at 1653-1655).  On November 11, 2010, Plaintiff submitted a claim for long

7    term disability insurance benefits with Sun Life.  (AR at 1653-1655).  Plaintiff requested

8    that Sun Life consider her date of disability as of December 10, 2008.  (AR at 1653-

9    1655).

10       On March 9, 2011, Sun Life denied Plaintiff's long term disability claim based on

11   her occupation as a Patient Satisfaction Representative.   (AR at 87-93).  Sun Life

12   explained that her coverage under the disability insurance policy terminated when she

13   resigned from her employment on June 20, 2010.[2]   (AR at 1014-1062).   However,

14   according to Northwest Medical Center's November 10, 2010 employer statement to Sun

15   Life, Plaintiff's employment had not been terminated as of November 10, 2010.  (AR at

16   1674-1677).  Plaintiff had been employed as a Patient Satisfaction Representative for one

17   year and three months as of November 10, 2010.  (AR at 1674-1677).

18       On May 20, 2011, Plaintiff's counsel sent a letter to Sun Life requesting

19   documentation including the short term disability file and other documents.  (AR at 806-

20   808).  On June 22, 2011, Plaintiff's counsel sent a letter to Sun Life advising them to

21   notify the long term disability department reviewing Plaintiff's claim that an error had

22   been made and Plaintiff's claim for long term disability benefits should have been

23   evaluated in 2009.  (AR at 135-137).  Sun Life denied Plaintiff's appeal of the denial of

24   her short term disability benefits on June 24, 2011.  (Doc. 66 at ¶41A).

25

26   *Plaintiff's Medical Disability*

27

28       [2] According to Plaintiff, since she had applied for disability benefits in 2009 and was eligible for long term disability benefits at that time, the policy would not have terminated relative to the benefit owed to her.  (Doc. 83 at ¶4).

On March 25, 2009, Dr. Joel Thompson found that as a result of Plaintiff's July 15, 2008 injury, her work should be limited. (AR at 2027-2029). Additionally, he found that Plaintiff was in no condition to lift more than five pounds and could not do any overhead activity. (AR at 2027-2029). This diagnosis was confirmed by Dr. Jon T. Abbott on July 13, 2009. (AR at 400-408). On August 12, 2009, Sun Life's nurse consultant Marie Gluszak explained that Plaintiff's medical file reasonably supports the diagnosis and physical impairment class stated as light with no heavy lifting. (AR at 1228-1230).

Additionally, the Industrial Commission of Arizona found that as a result of Plaintiff's July 15, 2008 shoulder injury, she is disabled from performing the duties of a Registered Nurse. (AR at 827-831). However, her medical limitations would not preclude her from performing the duties of a Patient Satisfaction Representative. (AR at 827-831).[3]

On July 12, 2010, Plaintiff visited Dr. Robert Pedowitz who diagnosed her with left shoulder impingement syndrome. (AR at 1750-1751). Additionally, Dr. William Sniger reviewed Plaintiff's medical file on behalf of Sun Life. Dr. Sniger noted that Plaintiff had arthroscopic surgery on her left shoulder on July 16, 2010 and was temporarily restricted from performing the duties of her position as a Patient Satisfaction Representative for a three to four month period after her surgery. (AR at 1533-1534). Prior to July 16, 2010, there were no restrictions or limitations on Plaintiff's ability to perform the material and substantial duties of a Patient Satisfaction Representative.[4] (Doc. 66 at ¶¶27, 40).

On June 2, 2011, Dr. Richard D. Corzatt reviewed a list of Plaintiff's medical

---

[3] Plaintiff argues that the Commission recognized Plaintiff as permanently disabled from being a Registered Nurse. Sun Life alleges that the Commission did not recognize that Plaintiff was permanently disabled from being a Registered Nurse. (Doc. 81 at ¶25). However, a determination of whether Plaintiff is permanently disabled from being a Registered Nurse is not material to the resolution of these motions.

[4] Plaintiff argues that while there were no restrictions on her ability to perform the duties of a Patient Satisfaction Representative, Sun Life failed to consider the inability to perform her duties and responsibilities as a Registered Nurse. (Doc. 83 at ¶27).

records from 2008 through 2011 and concluded that as a result of her July 2008 shoulder injury, Plaintiff would be precluded from returning to work in a medium occupation. (AR at 1450-1454).  However, she was not totally impaired and could perform a light occupation.  (AR at 1450-1454).  A June 22, 2011 MRI of Plaintiff's shoulder revealed a partial rotator cuff tear.  (AR at 810-811).  On August 2, 2011, Plaintiff underwent surgery to repair her rotator cuff tear.  (Doc. 68 at ¶20).

II.     *Procedural Background*

On February 28, 2012, Plaintiff filed a two count Complaint.  Count One was a Declaratory Judgment claim for benefits pursuant to 29 U.S.C. §1132(a)(1)(B) against Defendant Sun Life.  (Doc. 1).  Count Two was a claim for statutory damages against Defendant Sun Life and Community Health Systems for violating 29 U.S.C. §1132(c)(1). (Doc. 1).

On June 26, 2012, Plaintiff filed a Motion for Leave to File a First Amended Complaint.  (Doc. 29).  In her Motion, Plaintiff sought leave to correct the name of Defendant CHS in the caption and to add CHS as a defendant in her declaratory judgment claim for benefits under 29 U.S.C. §1132(a)(1)(B).  (Doc. 29).  The Court denied Plaintiff's Motion because her proposed First Amended Complaint was not sufficient. (Doc. 49).  However, the Court granted Plaintiff leave to file a Second Amended Complaint consistent with the Court's Order.  Plaintiff filed a Second Amended Complaint on December 3, 2012, which added CHS as a defendant in her declaratory judgment claim for benefits under 29 U.S.C. §1132(a)(1)(B) and as a defendant to her claim for the statutory penalty under 29 U.S.C. §1132(c)(1).

After the filing of her Second Amended Complaint, counsel for Defendant Sun Life wrote to Plaintiff objecting to the inclusion of paragraphs not present in Plaintiff's proposed First Amended Complaint.  Counsel for Plaintiff and Sun Life reached a resolution on that issue, whereby, Counsel agreed that Plaintiff would file a Motion for Leave to File a Third Amended Complaint, which eliminated the content in the Second Amended Complaint that Sun Life found objectionable.

On December 21, 2012, Plaintiff filed her Motion For Leave to File Third Amended Complaint. (Doc. 57).   In her proposed Third Amended Complaint, Plaintiff included a claim for equitable reformation of the contract pursuant to 29 U.S.C. §1132(a)(3).  Defendant Sun Life opposed the inclusion of a new claim for equitable reformation of the contract. (Doc. 60).  Prior to the Court's determination of Plaintiff's Motion; Plaintiff, Sun Life, and CHS filed cross Motions for Summary Judgment. (Docs. 65, 67, 69).

On March 25, 2013, the Court denied Plaintiff's Motion For Leave to File Third Amended Complaint. (Doc. 71).  The Court held that Plaintiff could not add a claim for equitable relief pursuant to 29 U.S.C. §1132(a)(3). (Doc. 71).  However, Plaintiff was granted leave to file a Fourth Amended Complaint excluding the equitable relief claim. On March 27, 2013, Plaintiff filed a Fourth Amended Complaint. (Doc. 72).

On April 10, 2013, Sun Life filed a Motion to Dismiss Count Two of Plaintiff's Fourth Amended Complaint seeking damages against Sun Life for violating 29 U.S.C. §1132(c)(1). (Doc. 76).  Then, on May 9, 2013, Plaintiff and CHS filed a Stipulation seeking the dismissal of Count Two of Plaintiff's Fourth Amended Complaint. (Doc. 91).  The Court granted Plaintiff and CHS's Stipulation and dismissed Count Two of Plaintiff's Complaint against CHS only. (Doc. 93).

III.   *Standard of Review*

Plaintiff brings this case pursuant to the Employment Retirement Income Security Act of 1974 ("ERISA") seeking disability benefits under Sun Life's long-term disability insurance policy. The purpose of ERISA is "to protect ... the interests of participants in employee benefit plans and their beneficiaries, by requiring the disclosure and reporting to participants and beneficiaries of financial and other information with respect thereto, by establishing standards of conduct, responsibility, and obligation for fiduciaries of employee benefit plans, and by providing for appropriate remedies, sanctions, and ready access to the Federal courts." 29 U.S.C. §1001(b). Title 29 U.S.C. §1132(a)(1)(B)

provides that a participant in an employee benefit plan may bring a civil action "to recover benefits due to him under the terms of his plan, to enforce his rights under the terms of the plan, or to clarify his rights to future benefits under the terms of the plan."

Courts review a denial of benefits challenged under 29 U.S.C. § 1132(a)(1)(B) *de novo,* unless the plan gives the plan administrator or fiduciary discretionary authority to determine benefit eligibility or construe the terms of the plan.  *Firestone Tire & Rubber Co. v. Bruch,* 489 U.S. 101, 115, 109 S.Ct. 948, 103 L.Ed.2d 80 (1989).  The parties agree that Sun Life's decision to deny long term disability benefits to Plaintiff is subject to a *de novo* review.

"When conducting a *de novo* review of the record, the court does not give deference to the claim administrator's decision, but rather determines in the first instance if the claimant has adequately established that he or she is disabled under the terms of the plan."  *Muniz v. Amec Construction Management, Inc.*, 623 F.3d 1290, 1295-1296 (9th Cir. 2010).  Further, the claimant must establish by a preponderance of the evidence her entitlement to benefits under the provisions of the applicable plan.  *Muniz*, 623 F.3d at 1294.

Summary judgment may be granted if the movant shows "there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law."  Rule 56(c), Federal Rules of Civil Procedure.  The moving party has the initial responsibility of informing the court of the basis for its motion.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S. Ct. 2548, 91 L.Ed.2d 265 (1986).

Once the moving party has met the initial burden, the opposing party must "go beyond the pleadings" and "set forth specific facts showing that there is a genuine [material] issue for trial." *Id.*, 477 U.S. at 248, 106 S.Ct. at 2510, internal quotes omitted. The nonmoving party must demonstrate a dispute "over facts that might affect the outcome of the suit under the governing law" to preclude entry of summary judgment. *Anderson v. Liberty Lobby Inc.*, 477 U.S. 242, 248, 106 S. Ct. 2505, 2510, 91 L.Ed.2d 202 (1986).  Further, the disputed facts must be material. *Celotex Corp.*, 477 U.S. at 322-

23.   In opposing summary judgment, a plaintiff is not entitled to rely on the allegations of her complaint, Fed.R.Civ.P. 56(e), or upon conclusory allegations in affidavits. *Cusson-Cobb v. O'Lessker*, 953 F.2d 1079, 1081 (7th Cir. 1992).  Further, "a party cannot manufacture a genuine issue of material fact merely by making assertions in its legal memoranda."  *S.A. Empresa de Viacao Aerea Rio Grandense (Varig Airlines) v. Walter Kiddle & Co.*, 690 F.2d 1235, 1238 (9th Cir. 1982).

The dispute over material facts must be genuine.  *Anderson*, 477 U.S. at 248, 106 S.Ct. at 2510.  A dispute about a material fact is genuine if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.*  A party opposing a properly supported summary judgment motion must set forth specific facts demonstrating a genuine issue for trial.  *Id.*  Mere allegation and speculation are not sufficient to create a factual dispute for purposes of summary judgment.  *Witherow v. Paff*, 52 F.3d 264, 266 (9th Cir. 1995) (per curiam).  "If the evidence is merely colorable or is not significantly probative, summary judgment may be granted."  *Anderson*, 477 U.S. at 249-50, 106 S. Ct. at 2511.

In most ERISA cases, judicial review is limited to the administrative record.  1 Ann.2004 ATLA-CLE 459 (2004); *Kearney v. Standard Ins. Co.*, 175 F.3d 1084, 1090 (9th Cir. 1999).  Under certain circumstances, additional evidence may be considered by a district court, at the court's discretion.  *Mongeluzo v. Baxter Travenol Long Term Disability Benefit Plan*, 46 F.3d 938, 943 (9th Cir. 1995).  When evaluating the case under a *de novo* standard of review, the district court may allow evidence that was not before the administrator in circumstances where it is clearly established that additional evidence is necessary to conduct an adequate review of the benefit decision.  *Id.* at 943-944 (quoting *Quesinberry v. Life Ins. Co. of North America*, 987 F.2d 1017, 1025 (4th Cir. 1993)) see also *Opeta v. Northwest Airlines Pension Plan for Contract Employees*, 484 F.3d 1211, 1217 (9th Cir. 2007).  "The district court should exercise its discretion, however, only when circumstances clearly establish that additional evidence is necessary to conduct an adequate *de novo* review of the benefit decision."  *Id.*

1    While the Court permitted limited discovery outside the administrative record in

2    this case, neither party has submitted any evidence in support of their Cross Motions for

3    Summary Judgment outside the administrative record.   As such, the Court's judicial

4    review shall be limited to the administrative record.

5

6    *Sun Life Assurance Co. of Canada*

7    Pursuant to Arizona law, an insurance policy is a contract.   *Tolifson v. Globe*

8    *American Cas. Co*., 138 Ariz. 31, 32, 672 P.2d 983, 984 (App. 1983) citing *D.M.A.F.B.*

9    *Fed. Credit Union v. Employers Mutual Liability Ins. Co. of Wis.,* 96 Ariz. 399, 402, 396

10   P.2d 20, 23 (1964).  "The provisions of insurance policies in Arizona must be construed

11   'according to their plain and ordinary meaning.'"   *Sciranko v. Fidelity & Guar. Life Ins.*

12   *Co.,* 503 F.Supp.2d 1293, 1308 (D. Ariz. 2007) *citing Sparks v. Republic Nat'l Life*, 132

13   Ariz. 529, 534 (1982).  In interpreting a contract, the Court must give "full meaning and

14   effect to all of the contract's provisions."   *In re Crystal Properties, Ltd., L.P.*, 268 F.3d

15   743, 748 (9th Cir. 2001).

16   However, an ambiguous policy term in an ERISA contract must be interpreted in

17   favor of the employee.   *Feibusch v. Integrated Device Technology, Ind. Employee Ben.*

18   *Plan*, 463 F.3d 880, 886 (9th Cir. 2006).  A term is ambiguous if it can reasonably be

19   construed in more than one sense and the construction cannot be determined within the

20   four corners of the contract.   *Bjornstad*, 599 F.Supp.2d at 1170 *citing J.D. Land Co. v.*

21   *Killan*, 158 Ariz. 210, 212, 762 P.2d 124, 126 (Ct. App. 1988).

22   Plaintiff does not dispute that she was properly excluded from short term disability

23   benefits due to the work place exclusion.  However, Plaintiff argues that she is entitled to

24   long term disability benefits based on the injury she sustained in 2008 while she was a

25   Registered Nurse.  As such, the Court will review the Administrative Record *de novo* to

26   determine whether Plaintiff is entitled to long term disability benefits.

27

28   *Long Term Disability Benefits*

- 10 -

A review of the administrative record, supports the finding that beginning on December 10, 2008, Plaintiff was unable to perform the usual and customary responsibilities of her position as a Registered Nurse as a result of the injury she sustained on July 15, 2008.  When Plaintiff suffered her injury and the last date that she performed her duties as a Registered Nurse, her long term disability insurance carrier was Aetna.   However, on January 1, 2009, her long term disability insurance carrier transitioned from Aetna to Sun Life.  (Doc. 68 at ¶67; AR at 1014-1062).

In order to prevent loss of coverage for an employee when this transition occurred, the Sun Life Long and Short Term Disability Insurance Policy ("Policy"), included a Continuity of Coverage provision.  (AR at 1052).  The first section of the Continuity of Coverage provision determines whether an employee with a pre-existing injury that is not eligible for benefits from the prior carrier will be insured under the Sun Life policy.  It provides:

> In order to prevent loss of coverage for an Employee when this Policy replaces a group [Long Term Disability] policy the Employer had in force with another insurer immediately prior to January 1, 2009, Sun Life will provide the following coverage:
>
> Employees not Actively at Work on January 1, 2009
> An Employee may become insured under this Policy on January 1, 2009, subject to all of the following conditions:
>
> 1.    he was insured under the prior insurer's group [Long Term Disability] policy immediately prior to January 1, 2009; and
>
> 2.    he is not Actively at Work on January 1, 2009; and
>
> 3.    he is a member of an Eligible Class under this Policy; and
>
> 4.    premiums for the Employee are paid up to date; and
>
> 5.    he is not receiving or eligible to receive benefits under the prior insurer's group [Long Term Disability] policy.

(AR at 1052).  The term "Actively at Work means that an Employee performs all

1   the regular duties of his job for a full work day scheduled by the Employer at the

2   Employer's normal place of business." (AR at 1022).

3          Plaintiff ceased performing her duties as a Registered Nurse on December 10,

4   2008 due to the injury she sustained on July 15, 2008.  As such, she was not "Actively at

5   Work" in her position as a Registered Nurse on January 1, 2009. While she continued to

6   perform some clerical responsibilities for Northwest Medical Center, she was physically

7   unable to perform her responsibilities as a Registered Nurse.

8          Sun Life acknowledges that Plaintiff was not "Actively at Work" on January 1,

9   2009, and was covered under the Policy pursuant to the Continuity of Coverage

10  provision.  (Doc. 80 at p. 6).  However, Sun Life argues that although Plaintiff was

11  covered pursuant to the Policy, she is not entitled to long term disability benefits based on

12  her occupation as a Registered Nurse.  The second section of the Continuity of Coverage

13  provision outlines a covered employee's eligibility for disability benefits.  It provides:

14              If an Employee continues to be not Actively at Work and
                subsequently becomes Totally or Partially Disabled on or
15              after January 1, 2009, any [Long Term Disability] benefit
                payable will be the lesser of:
16
                -       The [Long Term Disability] benefit payable
17                      under this Policy; or

18              -       The [Long Term Disability] benefit payable
                        under the prior insurer's group [Long Term
19                      Disability] policy had it remained in force.

20
21      (AR at 1052).

22          According to the Policy, an employee qualifies for a "Partial Disability" benefit if

23  "the Employee is working and has Disability Earnings of more than 20% but less than

24  80% of [her] Indexed Total Monthly Earnings; and during the Elimination Period and the

25  next 24 months, the Employee, because of Injury or Sickness, is unable to perform the

26  Material and Substantial duties of [her] Own Occupation."  (AR at 1040).[5]

27          [5] Plaintiff does not allege that she met the criteria for total disability.  An
    employee only qualifies for benefits for a total disability if that employee is not working
28  or works but earns less than 20% of her pre-disability earnings.  Since Plaintiff never
    ceased working and never earned less than 20% of her pre-disability earnings, she was

1   Thus, the Policy contemplates covered employees continuing to work in a limited

2   capacity to accommodate for the employee's injury and if that accommodated position

3   results in at least a 20% reduction in salary, the employee qualifies for long term partial

4   disability benefits.[6]   In this case, Plaintiff continued to work in an accommodated

5   position.  However, she did not continue to perform any of the material or substantial

6   duties of a Registered Nurse after December 10, 2008.  Nor did she perform Registered

7   Nursing duties on a part time basis.  Instead, after December 10, 2008, the Plaintiff began

8   performing clerical work.

9   Then, on April 17, 2009, Plaintiff was temporarily approved for a new pilot

10   program as a Patient Satisfaction Representative, which she retained without a reduction

11   in salary.  (AR at 2042).  On August 2, 2009 Plaintiff was hired for the permanent

12   position of Patient Satisfaction Representative and Plaintiff received a reduction in her

13   salary to less than 80% of her prior earnings.  (AR at 2042).

14   As such, August 2, 2009 was the first date that Plaintiff's earnings were less than

15   80% of her earnings as a Registered Nurse.  However, a reduction in earnings is only half

16   of the requirements to be eligible for partial disability benefits.  Pursuant to the terms of

17   the Policy, in addition to a reduction in earnings, an employee, due to an injury, must be

18   unable to perform the material and substantial duties of her "Own Occupation."  (AR at

19   1040).  The term "Own Occupation" has its own defined meaning pursuant to the Policy.

20   It is defined as:

21   the usual and customary employment, business, trade,
22   profession or vocation that the Employee performed as it is
    generally recognized in the national economy **immediately**
23   **prior to the first date Total or Partial Disability began**.

24   never eligible for total disability benefits.  (AR at 1039).

25   [6] It is undisputed that while Plaintiff was unable to perform the material and
26   substantial duties of her occupation as a Registered Nurse on January 1, 2009, she
    maintained disability earnings at 100% of her prior earnings while performing clerical
27   work.

28

- 13 -

Own Occupation is not limited to the job or position the Employee performed for the Employer or performed at any specific location.

(AR at 1027)(*emphasis added*).

The term "Own Occupation" is not concerned with an employee's title, position, or career. Instead, an employee's "Own Occupation" is defined by the work she actually performs. Since the employment performed by Plaintiff immediately prior to August 2, 2009 was that of a Patient Satisfaction Representative and not a Registered Nurse, her "Own Occupation" on August 2, 2009 was a Patient Satisfaction Representative.

If Plaintiff had performed the usual and customary duties of a Registered Nurse after December 10, 2008 until she received a reduction in salary but on a part time basis or if she had continued to perform some of the usual and customary duties of a Registered Nurse after December 10, 2008, limited by her injury, her "Own Occupation" likely would have remained that of a Registered Nurse.

However, Plaintiff acknowledges that she performed clerical work after December 10, 2008 to accommodate for her injury and beginning on April 17, 2009, she began performing the duties and responsibilities of a Patient Satisfaction Representative. (PSOF at 11, SSOF at 31). As such, while Plaintiff may have continued to retain the title of Registered Nurse on a leave of absence after December 10, 2008, since the work she performed immediately prior to August 2, 2009 was that of a Patient Satisfaction Representative, Plaintiff's "Own Occupation" on August 2, 2009, as defined by the Policy, was a Patient Satisfaction Representative.

Plaintiff argues that the proper measure of her own occupation is the job she performed over the course of time prior to the onset of her medical disability. In other words, Plaintiff argues that her own occupation for disability purposes should be the material duties of her long held position of Registered Nurse and not the accommodated position of Patient Satisfaction Representative. As support for her position, Plaintiff cites two cases; *Lasser v. Reliance Standard Ins. Co*., 344 F.3d 381 (3rd Cir. 2003) and *Peterson v. Continental Cas. Co*., 77 F.Supp.2d 420 (S.D.N.Y. 1999). However, these

cases are distinguishable from the case at bar.

In *Peterson*, the court determined that an employee was eligible for benefits based on his regular occupation as opposed to an accommodated position. However, the policy in *Peterson*, apparently did not define the term "regular occupation." *Peterson v. Continental Cas. Co.*, 77 F.Supp.2d 420, 427 (S.D.N.Y. 1999). Similarly, in *Lasser*, pursuant to the policy, an employee is only disabled if "he is capable only of performing the material duties of his regular occupation on a part time basis or some of the material duties on a full time basis." *Lasser v. Reliance Standard Life Ins. Co.*, 344 F.3d 381, 385 (3rd Cir. 2003). However, the policy failed to define the term "regular occupation." *Id.* As such, the Third Circuit determined that the term "regular occupation" referred to the occupation performed by the employee before the onset of disability and not an accommodated position taken after disability. *Id.*

However, in the case at bar, the Policy specifically defines the term "Own Occupation." As such, the Court is bound by the term as defined in the Policy. *Tolifson v. Globe American Cas. Co.*, 138 Ariz. 31, 32, 672 P.2d 983, 984 (App. 1983)(In an action based on an insurance policy, the terms of the policy must control) *citing D.M.A.F.B. Fed. Credit Union v. Employers Mutual Liability Ins. Co. of Wis.*, 96 Ariz. 399, 402, 396 P.2d 20, 23 (1964). Based on the term as defined in the Policy, Plaintiff's "Own Occupation" on August 2, 2009 was a Patient Satisfaction Representative. As such, Plaintiff is not entitled to long term disability benefits on August 2, 2009 because she was not unable to perform the material and substantial duties of a Patient Satisfaction Representative at that time.

According to Plaintiff, the last date that she worked at Northwest Medical Center was June 16, 2010.[7] (AR at 1653-1655). According to the Policy, an employee ceases to be insured on the date the employment terminates. (AR at 1053). Sun Life argues that Plaintiff's employment was terminated when she resigned on June 20, 2010. However,

---

[7] Plaintiff's attendance records indicate that the last date she worked at Northwest Medical Center was June 20, 2010.

according to her employer, as of November 10, 2010, Plaintiff's employment had not been terminated.  (AR at 1674-1677).[8]  Nevertheless, even though Plaintiff's employment was not terminated according to her employer, it was terminated pursuant to the terms of the Policy.

Plaintiff's eligibility for insurance terminated on the date that she ceased to be "Actively at Work," which is deemed a termination of employment.  (AR at 1053).

According to the Plan,

> An Employee is considered Actively at Work on any day that is not his regular scheduled work day (e.g. vacation or holiday), provided the Employee was Actively at Work on his immediately preceding scheduled work day and the Employee is not hospital confined or is not disabled due to an injury or sickness.

(AR at 1022).   Despite not being "Actively at Work," insurance coverage continues for an employee that is absent due to a disability during the "Elimination Period."  (AR at 1053).  Additionally, insurance may be continued for up to three months of the employee's paid vacation or one month after the Employee has been given an approved leave of absence.  (AR at 1053).

Plaintiff's attendance records indicate that she received paid time off from June 21 through June 24, 2010.  (AR at 1511-1528).  As such, her coverage continued through June 24, 2010.  However, Plaintiff ceased to be "Actively at Work" after June 24, 2010. Plaintiff's medical records indicate that she was not restricted from performing the usual and customary duties and responsibilities of a Patient Satisfaction Representative until July 16, 2010.[9]  Accordingly, Plaintiff is not eligible for coverage based on her July 16, 2010 surgery because she had ceased to be "Actively at Work" on June 25, 2010, prior to her disability, which terminated her coverage.

---

[8] Further, Plaintiff's attendance records indicate that Plaintiff continued to accumulate hours by utilizing her personal time off and her employee illness bank time after June 20, 2010.  (AR at 1511-1528).

[9] Plaintiff does not dispute that prior to July 16, 2010, there were no restrictions on her ability to perform the duties and responsibilities of a Patient Satisfaction Representative.  (Doc. 83 at ¶27).

Since Plaintiff's "Own Occupation" on August 2, 2009 was a Patient Satisfaction Representative and Plaintiff was not disabled from performing the material and substantial duties of a Patient Satisfaction Representative until July 16, 2010, which was after her eligibility for coverage was terminated, Plaintiff is not entitled to long term disability benefits pursuant to the Policy.

*CHS/Community Health System*

On January 1, 2009, Sun Life issued the Policy to CHS, which was offered to all eligible employees of Northwest Medical Center.  (CHS Statement of Facts ¶¶2, 4)(Doc. 70).  CHS delegated the authority to administer claims and to determine eligibility for long term disability benefits under the Policy to Sun Life.  (Doc. 70 at ¶6).

CHS argues that since it delegated authority to administer claims for long term disability benefits, including making determinations with respect to a claimant's eligibility for such benefits and the amount of any benefits due under the Policy to Sun Life, it does not control the administration of claims or payment of benefits under the Policy.  As such, Plaintiff cannot sustain a claim against CHS for the recovery of disability benefits.  Plaintiff argues that the plan administrator is an appropriate party in a claim for benefits pursuant to 29 U.S.C. §1132(a)(1)(B).

Plaintiff and CHS both cite to *Cyr v. Reliance Standard Life Insurance Co.*, 642 F.3d 1202 (9th Cir. 2011) as authority for their positions.  Plaintiff argues that there is no language in *Cyr* that absolves the plan administrator from its role in ERISA.  However, while Plaintiff acknowledges that Sun Life should be the ultimate source of payment, Plaintiff contends that CHS can go to Sun Life for indemnity on any claim successfully brought by Plaintiff against CHS.

The Ninth Circuit Court of Appeals in *Cyr* explained that in some circumstances it is not enough to identify a plan administrator as a potential defendant.  *Cyr v. Reliance Standard Life Ins. Co.*, 642 F.3d 1202, 1207 (9th Cir. 2011).  The plan administrator in *Cyr* had no involvement in the denial of the claim.  *Id*.  Another entity, the plan's insurer, controlled the decision whether to grant or deny the claim.  *Id.* at 1204.  The court in *Cyr*

concluded that the plan's insurer was the logical defendant in an action for benefits as authorized by §1132(a)(1)(B). *Id*. at 1207.

The court in *Cyr* explained that:

A plan administrator under ERISA has certain defined responsibilities involving reporting, disclosure, filing, and notice. But the plan administrator can be an entity that has no authority to resolve benefit claims or any responsibility to pay for them.

*Id*. (*internal citations omitted*). Plaintiff does not allege that CHS failed to disclose any information. Plaintiff's only remaining claim against CHS is to recover disability benefits pursuant to §1132(a)(1)(B). However, Plaintiff acknowledges that the authority to administer claims for long term disability benefits, including making determinations with respect to a claimant's eligibility for such benefits and the amount of any benefits due under the Policy was delegated by CHS to Sun Life.[10] As such, even though CHS was identified as the plan administrator, it had nothing to do with denying Plaintiff's claim for long term disability benefits. Thus, Sun Life, and not CHS, is the logical defendant for an action by Plaintiff for benefits as authorized by §1132(a)(1)(B). *Cyr v. Reliance Standard Life Ins. Co*., 642 F.3d 1202, 1207 (9th Cir. 2011).

The Court finds that according to *Cyr*, the entity with the authority to resolve benefit claims is the proper defendant in an action to recover benefits. Thus, an entity with no authority to resolve benefit claims or any responsibility to pay them is not a proper defendant to recover benefits as authorized by §1132(a)(1)(B). *See Id*. at 1207. Plaintiff argues that since CHS directed Plaintiff to contact Sun Life to initiate the claims process and provided information to Sun Life about Plaintiff's employment, it was involved in the claims process. However, the fact that CHS directed Plaintiff to Sun Life to file her claim for benefits confirms that CHS was not involved in the claims process.

---

[10] In CHS's Statement of Facts, it provides "CHS/ delegated the authority to administer claims and determine eligibility for long term disability benefits under the Plan to Sun Life." (Doc. 70 at ¶6). In Plaintiff's response, she does not dispute this factual assertion. (Doc. 85 at ¶6).

Moreover, the mere fact that CHS provided information to Sun Life regarding Plaintiff's employment with CHS and Northwest Medical Center does not establish that CHS had any involvement in the ultimate resolution of Plaintiff's claim for benefits.

Accordingly, the Court finds that in this case, since CHS had no authority to resolve benefit claims or any responsibility to pay them, it is not the proper defendant for an action to recover benefits as authorized by §1132(a)(1)(B).   *See Cyr v. Reliance Standard Life Ins. Co*., 642 F.3d 1202, 1207 (9th Cir. 2011); *Moore v. Lafayette Life Ins. Co*., 458 F.3d 416, 438 (6th Cir. 2006) (holding that the claims administrator is the proper defendant in an action for ERISA benefits and dismissal of the plan administrator was proper where the claims administrator exercised full authority to adjudicate claims for benefits);   *Garren v. John Hancock Mut. Life Inc. Co*., 114 F.3d 186, 187 (11th Cir. 1997) (holding that "the proper party defendant in an action concerning ERISA benefits is the party that controls administration of the plan).

*Statutory Damages*[11]

Plaintiff argues that Sun Life is liable for statutory penalties for not providing essential plan documents including Aetna's contract, which was in effect in 2008. Pursuant to 29 U.S.C. §1132(c)(1):

> Any administrator … (B) who fails or refuses to comply with a request for any information which such administrator is required by this subchapter to furnish to a participant or beneficiary (unless such failure or refusal results from matters reasonably beyond the control of the administrator) by mailing the material requested to the last known address of the requesting participant or beneficiary within 30 days after such request may in the court's discretion be personally liable to such participant or beneficiary in the amount of up to $100 a day from the date of such failure or refusal, and the court

---

[11] In Count II of Plaintiff's Fourth Amended Complaint, she alleged violations of 29 U.S.C. §1132(c) against Sun Life and CHS.  However, on May 9, 2013, this Court granted a Stipulation of Dismissal of Count II alleging a violation of 29 U.S.C. §1132(c) against CHS.  (Doc. 93).  As such, any arguments in the parties' respective filings addressing CHS's liability pursuant to Count II of Plaintiff's Fourth Amended Complaint alleging a violation of 29 U.S.C. §1132(c) are moot and will not be addressed by the Court.

may in its discretion order such other relief as it deems proper.

29 U.S.C. §1132(c)(1)(B).   While the general duty to disclose documents and information is outlined in 29 U.S.C. §1021, specific requests for documentation and information outside of the routine reporting cycles is governed by 29 U.S.C. §1024(b)(4). Pursuant to that section:

> The administrator shall, upon written request of any participant or beneficiary furnish a copy of the latest updated summary, plan description, and the latest annual report, any terminal report, the bargaining agreement, trust agreement, contract, or other instruments under which the plan is established or operated.

29 U.S.C. §1024(b)(4).  Plaintiff argues that on multiple occasions from July 15, 2009 through May 20, 2011, she sent letters to Sun Life requesting various documents and records related to her claim.   On May 20, 2011, Plaintiff's counsel sent a letter to Sun Life requesting a copy of Plaintiff's 2009 short term disability file and documents relating to the transition from Aetna to Sun Life including a summary plan description, negotiations between the Sponsor and Sun Life, and illustrations on how one injured in 2008 but not eligible for coverage until 2009 is handled.

Pursuant to Ninth Circuit precedent, only a plan administrator as defined in 29 U.S.C. §1002(16)(A), can be liable under 29 U.S.C. §1132(c).  *Sgro v. Danone Waters of North America, Inc.*, 532 F.3d 940, 945 (9th Cir. 2008)(holding that MetLife as claim administrator is not liable under Section 1132(c)(1) as it only applies to the plan administrator); *Cline v. Industrial Maintenance Engineering & Contracting Co.*, 200 F.3d 1223, 1234 (9th Cir. 2000)(holding that "[u]nder 29 U.S.C. §1132(c), only the plan 'administrator' can be held liable for failing to comply with the reporting and disclosure requirements."); *see also Moran v. Aetna Life Ins. Co.*, 872 F.2d 296, 299 (9th Cir. 1989). It is undisputed that CHS was the plan administrator while Sun Life was the claims administrator.  Further, Plaintiff concedes that pursuant to Ninth Circuit precedent, Sun Life cannot be held liable pursuant to 29 U.S.C. §1132(c).  (Doc. 67 p. 13).

Plaintiff argues that this Court should ignore Ninth Circuit Court of Appeals

precedent and follow the guidance from the First and Eleventh Circuit Court of Appeals. *See Law v. Ernest & Young*, 956 F.2d. 364 (1st Cir. 1992); *Rosen v. TRW, Inc.,* 979 F.2d 191, 193-194 (11th Cir. 1992).  Plaintiff argues that the First and Eleventh Circuits of the United States Court of Appeals define the term "[a]ny administrator" from §1132(c)(1) as including the insurance company claim administrator such as Sun Life in this case.

In *Law v. Ernest & Young*, the First Circuit Court of Appeals held that an entity that was not identified as the plan administrator in the plan documents may be held liable under §1132(c).  *Law v. Ernest & Young*, 956 F.2d. 364, 372 (1st Cir. 1992).  The First Circuit recognized the theory of the "*de facto* plan administrator." *Tetreault v. Reliance Standard Life Ins. Co.,* 2013 WL 823314 (D. Mass. 2013) citing  *Ernest & Young*, 956 F.2d. at 372-373.  Under this theory, a court may hold a party liable under §1132(c) as a *de facto* plan administrator if the party assumes control of the plan administrator's function and presents itself as the plan administrator, even if that party is not specifically identified as the plan administrator.  *Tetreault v. Reliance Standard Life Ins. Co.,* 2013 WL 823314 (D. Mass. 2013) citing  *Ernest & Young*, 956 F.2d. at 372-373.

The First Circuit Court of Appeals reasoned that its holding was consistent with the Ninth Circuit Court of Appeals, which had previously held that an insurance company cannot be liable pursuant to §1132(c) because it was not the plan administrator.  *Law v. Ernest & Young*, 956 F.2d. 364, 374 (1st Cir. 1992) *citing Moran v. Aetna Life Ins. Co.*, 872 F.2d. 296 (9th Cir. 1989).  Specifically, the First Circuit Court of Appeals found that *Moran* involved attempts to recover against entities that were clearly distinct from the plan administrator, while in *Ernest & Young*, the party against whom recovery was sought had set up an internal committee, which it named the plan administrator.  This internal committee had little, if any, separate identity from the party against whom recovery was sought.   *Law v. Ernest & Young*, 956 F.2d. 364, 374 (1st Cir. 1992).

There is no dispute that CHS and Sun Life are separate entities and that CHS was the plan administrator.  As such, the First Circuit Court of Appeals opinion in *Ernest & Young* is distinguishable to the case at bar.  Further, at least one district court in the First Circuit has interpreted the doctrine from *Ernest & Young* as being inapplicable to

- 21 -

insurance companies. *Tetreault v. Reliance Standard Life Ins. Co.,* 2013 WL 823314 (D. Mass. 2013). The policy at issue in this case is an insurance policy.

Additionally, at least one court in the Eleventh Circuit has interpreted the Eleventh Circuit Court of Appeal's decision in *Rosen* as standing for the proposition that an "employer that establishes a plan and acts as the *de facto* plan administrator may not shield itself from liability as plan administrator by designating sham entity in the plan document." *Castro v. Hartford Life and Acc. Ins. Co.*, 2011 WL 4889174 (M.D. Fl. 2011). Plaintiff does not allege and there is no evidence presented to this Court to suggest that CHS is a sham entity created by Sun Life to act as plan administrator. CHS is a wholly separate entity from Sun Life. Regardless, this Court is bound by the precedent of the Ninth Circuit Court of Appeals, which as recently as 2008 reaffirmed its principle that only the plan administrator can be held liable pursuant to §1132(c)(1). *Sgro*, 532 F.3d at 945.

Alternatively, Plaintiff argues that the Ninth Circuit Court of Appeals case of *Cyr v. Reliance Standard Insurance Co.*, recently addressed a similar situation to the case at bar. Relying on *Cyr*, Plaintiff argues that Sun Life is liable for the statutory penalty pursuant to §1132(c)(1), because it did not provide Plaintiff with requested documents.

As discussed earlier, in *Cyr*, the Ninth Circuit Court of Appeals held that "defendants in actions brought under §1132(a)(1)(B) should not be limited to plans and plan administrators." *Cyr v. Reliance Standard Life Insurance Co.*, 642 F.3d 1202, 1206 (9th Cir. 2011). However, in *Cyr*, the Ninth Circuit Court of Appeals did not address claims brought pursuant to §1132(c)(1). *See Cyr*, 642 F.3d at 1206-1207.

Unlike §1132(a)(1)(B), which does not explicitly specify which parties can be liable, §1132(c)(1) does specifically identify that the parties that can be liable pursuant to that section are "[a]ny administrator." 29 U.S.C. §1132(c)(1). As noted earlier, the Ninth Circuit Court of Appeals has held that the term "any administrator" in §1132(c) applies exclusively to plan administrators. *Sgro*, 532 F.3d at 945.

Further, even as here where the claims administrator is responsible for making the benefits determination and thus, the plan administrator may not have had the documents

requested by Plaintiff on hand, the liable party pursuant to a §1132(c) claim remains the plan administrator. *Sgro*, 532 F.3d at 945. Accordingly, since Sun Life was not the plan administrator, Plaintiff's claim for statutory damages pursuant to §1132(c) against Sun Life is dismissed.

*Motion to Dismiss for Failure to State a Claim*

After filing its Motion for Summary Judgment, which specifically addressed whether Sun Life could be held liable for statutory damages pursuant to §1132(c), Sun Life filed a Motion to Dismiss Plaintiff's claim for statutory damages against Sun Life pursuant to §1132(c) for failure to state a claim. (Doc. 76).

The Court has already determined that as the claims administrator, Sun Life, cannot be held liable pursuant to §1132(c), which only authorizes claims against the plan administrator. In light of the Court's determination, any proposed amendment by Plaintiff against Sun Life alleging statutory damages pursuant to §1132(c), would be futile. *See Miller v. Rykoff-Sexton*, 845 F.2d 209, 214 (9th Cir. 1988).

As such, since the Court has already determined that Sun Life cannot be held liable for statutory damages pursuant to §1132(c), in its evaluation of Sun Life's Summary Judgment Motion, Sun Life's Motion to Dismiss for Failure to State a Claim is denied as moot.

*Conclusion*

After conducting a *de novo* review of the administrative record, the Court finds that Plaintiff is not entitled to long term disability benefits. Further, the Court finds that there are no genuine issues as to any material facts and Defendants Sun Life and CHS are entitled to judgment as a matter of law.

Accordingly, IT IS ORDERED:

1.     Plaintiff's Motion for Summary Judgment, (Doc. 67), is DENIED.

2.     Sun Life Assurance Co. of Canada's Motion for Summary Judgment is GRANTED. (Doc. 65).

3.     CHS/Community Health Systems, Inc. Motion for Summary Judgment is GRANTED.  (Doc. 69).

4.     Sun Life Assurance Co. of Canada's Rule 12(b)(6) Motion to Dismiss for Failure to State a Claim, (Doc. 76), is DENIED AS MOOT.

5.     Judgment is entered in favor of CHS/Community Health Systems, Inc. and Sun Life Assurance Co. of Canada against Diana C. Anderson.

6.     The Clerk of Court shall enter judgment accordingly and close its file in this matter.

Dated this 19th day of November, 2013.


_____
Cindy K. Jorgenson
United States District Judge